112 A.3d 624

## In re the THIRTY–FIFTH STATEWIDE INVESTIGATING GRAND JURY.

Supreme Court of Pennsylvania.

Argued March 11, 2015.

Decided March 31, 2015.

Joseph A. Del Sole, Esq., William Shaw Stickman IV, Esq., Del Sole Cavanaugh Stroyd, L.L.C., Pittsburgh, Ross Mitchell Kramer, Esq., Amil Michael Minora, Esq., Minora, Minora, Colbassani, Krowiak & Mattioli, Scranton, Gerald L. Shargel, Esq., for Kathleen G. Kane.

Thomas E. Carluccio, Esq., Law Office of Thomas E. Carluccio, for Special Prosecutor.

SAYLOR, C.J., EAKIN, BAER, TODD, STEVENS, JJ.

### *OPINION ANNOUNCING THE JUDGMENT OF THE COURT*

Chief Justice SAYLOR.

Through the filing of an action in *quo warranto*, Pennsylvania Attorney General Kathleen G. Kane has asked this Court

to quash the appointment of a special prosecutor investigating violations of grand jury secrecy requirements.

In the Spring of 2014, the supervising judge for the Thirty–Fifth Statewide Investigating Grand Jury found that there were reasonable grounds to believe that an investigation should be conducted into allegations that grand jury secrecy had been compromised. *See generally* 42 Pa.C.S. § 4549(b) (providing that jurors, attorneys, interpreters, stenographers, recording-device operators, or typists shall be sworn to secrecy and may disclose matters occurring before an investigating grand jury only when so directed by the court, on pain of sanctions for contempt). The supervising judge proceeded to appoint Thomas E. Carluccio, Esquire (the "Special Prosecutor"), to investigate and prosecute any illegal disclosures. The work of the Special Prosecutor culminated in a grand jury presentment recommending the filing of criminal charges against Attorney General Kane.

Attorney General Kane, represented by private counsel, commenced the instant *quo warranto* action in December 2014, invoking this Court's jurisdiction under Section 721 of the Judicial Code. *See* 42 Pa.C.S. § 721 (investing the Supreme Court with original jurisdiction of *quo warranto* matters as to officers of statewide jurisdiction). *See generally In re One Hundred or More Qualified Electors of the Municipality of Clairton*, 546 Pa. 126, 132, 683 A.2d 283, 286 (1996) (explaining that "a *quo warranto* action constitutes the proper method to challenge title or right to public office"). In her initial submission, Attorney General Kane highlighted that no statute on record in the Commonwealth authorizes the appointment of a special prosecutor for an investigating grand jury. Further, she observed that the power to investigate and prosecute is reposed in the executive branch. In particular, Attorney General Kane noted that, under the Investigating Grand Jury Act,[1] local district attorneys and the Attorney General or her designee are the only officials authorized to serve as an "Attorney for the Commonwealth." 42 Pa.C.S.

---

1. Act of October 5, 1980, P.L. 693, No. 142 (as amended 42 Pa.C.S. §§ 4541–4553).

§ 4542. Additionally, she explained that, per the Commonwealth Attorneys Act,[2] the authority to convene and conduct statewide investigating grand juries is reposed exclusively in the elected office which she holds. *See* 71 P.S. § 732–206(b).

For the above reasons, Attorney General Kane asserted that the appointment by the judicial branch of a private attorney to serve as a "special prosecutor" violated the separation-of-powers doctrine. *See generally Jubelirer v. Rendell*, 598 Pa. 16, 41, 953 A.2d 514, 529 (2008) (explaining that this principle "forbids any branch [of government] from exercising the functions exclusively committed to another branch"). Moreover, she contended, the appointment specifically contravened this Court's decision in *Smith v. Gallagher*, 408 Pa. 551, 185 A.2d 135 (1962), *overruled on other grounds by In re Biester*, 487 Pa. 438, 442, 409 A.2d 848, 850 (1979), which emphasized the importance of maintaining the appropriate separation of powers among branches of government and strongly disapproved the convening of a "special grand jury" and an appointment of a special prosecutor in connection with the proceedings before such entity. *See, e.g., id.* at 567–68, 185 A.2d at 143.

In response, the Special Prosecutor maintained that a grand jury supervising judge possesses plenary power to supervise the proceedings of the investigating grand jury and to appoint a special prosecutor where warranted. According to the Special Prosecutor, "[t]he implications for continued government corruption or serious breaches of grand jury secrecy, unabated by the review of a grand jury, such as here, are glaringly obvious." Memorandum in Support of Answer of Special Prosecutor at 4; *see also id.* at 5 ("[I]t is respectfully asserted that the conflicts of interest so clearly associated with the [Office of Attorney General] conducting an investigation of itself on matters pertaining to violations of grand jury secrecy represent a position which is irresponsible.").

In an initial opinion in support of the appointment, the supervising judge relied on *In re Dauphin County Fourth*

2. Act of October 8, 1980, P.L. 950, No. 164 (as amended 71 P.S. §§ 732–101–732–506).

*Investigating Grand Jury,* 610 Pa. 296, 19 A.3d 491 (2011). There, this Court recently observed that "[t]he very power of the grand jury, and the secrecy in which it must operate, call for a strong judicial hand in supervising the proceedings" and indicated that, "[w]hen there are colorable allegations or indications that the sanctity of the grand jury process has been breached and those allegations warrant investigation, the appointment of a special prosecutor to conduct such an investigation is appropriate." *Id.* at 318, 19 A.3d at 503–04. Further, the supervising judge commented:

> The Supervising Judge of a Statewide Investigating Grand Jury must have inherent authority to investigate a grand jury leak, when there is a conflict of interest as there is here. Clearly, Attorney General Kane could not investigate herself. Otherwise potentially serious violations of grand jury secrecy could go unaddressed.

*In re Thirty–Fifth Statewide Investigating Grand Jury,* No. 2644–2012, *slip op.* at 4 (C.P. Montgomery Dec. 30, 2014). The supervising judge also explained that, at the time he appointed the Special Prosecutor, he informed then-Chief Justice Castille of the action and asked to be advised if he had erred or exceeded his authority. *See id.* at 4.

Upon consideration of these submissions, this Court granted leave to file original process and directed the parties to file supplemental briefs discussing the apparent tension between the *Smith* and *Dauphin County* decisions, as well as the legislative history surrounding the appointment of special prosecutors in Pennsylvania.

In her supplemental briefs, Attorney General Kane maintains particular emphasis on the *Smith* decision. She explains that, in that case, this Court had reviewed the appointment of an attorney as "special prosecutor" by a judge of the Court of Quarter Sessions of Philadelphia County, who charged him with conducting an investigation using a "special grand jury." *Smith,* 408 Pa. at 556, 185 A.2d at 137. Attorney General Kane stresses the strong admonitory language employed by the Court in its disapproval of the attempt by a judicial officer to fill "an office which does not exist" under Pennsylvania law.

*Id.* at 556, 185 A.2d at 137; *see also id.* at 580, 185 A.2d at 149 ("[T]here is no public office in Pennsylvania known as Special Prosecutor."). For example, she quotes the Court's criticism of "what can occur when the regular forms and procedure of government are not followed, and judges embark on independent ventures, sailing in ships without sails of authority, using engines devoid of constitutional power and employing a compass lacking decisional direction." *Id.* at 562, 185 A.2d at 140. Attorney General Kane also develops that the *Smith* Court grounded its decision in separation-of-powers principles. *See id.* at 583, 185 A.2d at 151 (indicating that the appointing jurist had "disfranchise[d] the people of Philadelphia in the realm of their freedom to select a District Attorney of their own choice").

As further support for her challenge, Attorney General Kane points to the now-expired Independent Counsel Authorization Act.[3] She explains that this enactment had expressly sanctioned the appointment of a special prosecutor to oversee an investigation into allegations that a person with statutorily-defined ties to the Office of Attorney General had engaged in certain criminal conduct which otherwise would reside within that office's exclusive investigative jurisdiction. *See* 18 Pa. C.S. §§ 9312, 9315. It is Attorney General Kane's position that the Independent Counsel Authorization Act would have applied in the instant circumstances, had the enactment not expired according to its own terms. In the absence of such statutory authority, Attorney General Kane contends, the judiciary lacks the power and prerogative to appoint a special prosecutor. Along these lines, Attorney General Kane refers to the legislative history of the Independent Counsel Authorization Act, and, in particular, supportive comments of the Honorable Albert H. Masland during his term as a member of the Pennsylvania House of Representatives, to the effect that: "I truly believe that this measure is essential to us, and without it, *there really is nothing to take its place.*" Pa.

3. Act of February 18, 1998, P.L. 102, No. 19 (previously 18 Pa.C.S. §§ 9301–9352).

House Legislative Journal, June 10, 1997, at 1247 (emphasis added).

As to the *Dauphin County* decision, Attorney General Kane distinguishes the circumstances presented there on the basis that the Court had restricted the authority of the appointed special prosecutor to the conduct of an investigation and the issuance of a report. *See Dauphin County,* 610 Pa. at 309–11, 19 A.3d at 499. According to Attorney General Kane, the special prosecutor's role in the *Dauphin County* scenario would be more accurately described as being in the nature of a "special master." Supplemental Reply Memorandum of Attorney General Kane at 11 & n. 9 (quoting BLACK'S LAW DICTIONARY 990 (7th ed.1999) (defining "special master" as a "master appointed to assist the court with a particular matter or case")).

Finally, Attorney General Kane highlights that the confidential information in issue was the subject of a previous grand jury proceeding and not any proceedings before the Thirty–Fifth Statewide Investigating Grand Jury. In this regard, it is her position that a supervising judge has no power to grant authority to investigate and prosecute an alleged historical breach of grand jury confidentiality.

In a supplemental opinion, the supervising judge relies upon Section 323 of the Judicial Code, which invests courts with the power to issue "every lawful writ and process necessary or suitable for the exercise of its jurisdiction and for the enforcement of any order which it may make and all legal and equitable powers required for or incidental to the exercise of its jurisdiction[.]" 42 Pa.C.S. § 323; *see also* Supplemental Opinion in *In re Thirty–Fifth Statewide Investigating Grand Jury,* No. 197 MM 2014, *slip op.* at 7 (Carpenter, J., Feb. 18, 2015) ("A supervising judge of an investigating grand jury must possess [the] inherent power to enforce the traditional rule of secrecy over grand jury proceedings because of the very nature of those proceedings."). This allocation, the supervising judge explains, is consistent with the concept of inherent or implied powers in the judiciary and the prevailing common-law approach. *Accord Dauphin County,* 610 Pa. at

318, 19 A.3d at 504; *cf. Commonwealth ex rel. Carroll v. Tate,* 442 Pa. 45, 53, 274 A.2d 193, 197 (1971) (recognizing inherent power in the courts to "preserve the efficient and expeditious administration of Justice and protect it from being impaired or destroyed").

The supervising judge regards the *Smith* decision as being inapposite and limited to its facts, because it concerned the unlawful empanelment of a "special grand jury" and inappropriate displacement of a district attorney, *see Smith,* 408 Pa. at 556–57, 185 A.2d at 137, not grand jury secrecy or the mechanism by which to address breaches which may have been occasioned by members of the Office of Attorney General. According to the supervising judge, his appointment of a special prosecutor was necessary "because Attorney General Kane was not going to investigate a violation of [law] that she caused to occur due to her inherent conflict of interest." Supplemental Opinion in *Thirty–Fifth Statewide Investigating Grand Jury,* No. 197 MM 2014, *slip op.* at 10. The supervising judge concludes that "*In re Dauphin County* demonstrates that judicial appointment of a special prosecutor is appropriate and necessary when violations of grand jury secrecy are at issue and are alleged to have been committed by those in the normal chain of command, i.e., the executive branch." *Id.* at 21–22

The Special Prosecutor's brief is consistent with the opinion of the supervising judge. He also takes issue with Attorney General Kane's portrayal of his authority as being unbridled. *See, e.g.,* Brief for the Special Prosecutor at 8 ("The appointment was made within refined and well-focused parameters, and the appointed Special Prosecutor was not authorized by the Order to pursue investigation of other matters, in an indiscriminate manner, or for an indeterminate time period.").[4]

---

4. Both the supervising judge and the Special Prosecutor have advanced the position that the *quo warranto* challenge is moot, given the issuance of a presentment. We find, however, that the matter is capable of repetition and of sufficient public importance that the mootness arguments need not be considered further. *See, e.g., Consumers Ed. & Protective Ass'n v. Nolan,* 470 Pa. 372, 383, 368 A.2d 675, 681 (1977)

■ Upon our review, as a preliminary matter, we note that the use of the *quo warranto* device to challenge the Special Prosecutor's authority is questionable. In this regard, Rule of Appellate Procedure 3331 affords an explicit procedural avenue for challenging the appointment of a special prosecutor. *See* Pa.R.A.P. 3331(a)(1) (providing for review, pursuant to Chapter 15 of the Rules of Appellate Procedure of an order relating "to the appointment, supervision, administration or operation of a special prosecutor"). This rule was designed "to provide a simple and expeditious method for Supreme Court supervision of special prosecutions and investigations, *e.g.*, orders of the supervising judge of an investigating grand jury[.]" *Id.*, Note. The Court, accordingly, has treated its review orders within the scope of Rule 3331—including those appointing special prosecutors—as a matter resting within its supervisory prerogative. This approach contrasts with *quo warranto* review, which, when it pertains, generally serves as

(relying on such exceptions to the mootness doctrine in declining to dismiss).

The supervising judge and Special Prosecutor also believe that Attorney General Kane waived any challenge to the Special Prosecutor's authority by failing to raise a contest earlier, cooperating in the leaks investigation, and appearing under subpoena to give testimony before the grand jury during the course of such investigation. At least as concerns government employees, however, this Court has relaxed the requirement to suffer contempt in order to advance a challenge to a subpoena issued in the context of grand jury proceedings. *See In re Thirty–Third Statewide Investigating Grand Jury*, 624 Pa. 361, 369–72, 86 A.3d 204, 209–10 (2014). We take a similar approach with regard to Attorney General Kane's decision to appear and give testimony, which we conclude should not prejudice her ability to challenge the lawfulness of the Special Prosecutor's appointment, at least insofar as we permit her to proceed with her *quo warranto* action over and against the procedural concerns discussed below. The delay in Attorney General Kane's assertion of a *quo warranto* challenge also will not be deemed controlling here.

It is a different question whether the *de facto* officer doctrine would apply to validate the Special Prosecutor's actions while he served under a presumptively valid court order, should his appointment ultimately be deemed invalid. *See generally State Dental Council & Examining Bd. v. Pollock*, 457 Pa. 264, 268, 318 A.2d 910, 913 (1974) (discussing the *de facto* legitimacy of the acts of public officials while holding colorable claims to public office). In light of our disposition, below, in which we uphold the Special Prosecutor's appointment, we need not reach the question of *de facto* legitimacy in the present setting.

a "sole and exclusive" avenue for pursuing relief. *In re Stout,* 521 Pa. 571, 576, 559 A.2d 489, 492 (1989) (quoting *Spykerman v. Levy,* 491 Pa. 470, 484, 421 A.2d 641, 648 (1980)).

In the present instance, however, we acknowledge that an action in *quo warranto* facially would seem to lie, at least independent of our procedural rules. Moreover, as the Special Prosecutor has in fact served in the role of a *de facto* public official (regardless of whether the *de facto* official doctrine ultimately would be deemed to apply to his actions were his appointment deemed invalid, *see supra* note 4), we will proceed to consider Attorney General Kane's challenge on the merits. *Cf. Stout,* 521 Pa. at 576, 559 A.2d at 492 (explaining that a writ of *quo warranto* may be used to address an unlawful exercise of authority by a *de facto* public official). For prospective purposes, however, we clarify that the Rules of Appellate Procedure provide the appropriate mechanics for contesting the appointment, supervision, administration, or operation of a special prosecutor. *See, e.g.,* Pa.R.A.P. 3331. Additionally, as a practical matter—particularly to the degree the *de facto* officer doctrine would apply—a timely challenge under Rule 3331 may be the only viable method for attacking the effect of such appointments.[5]

█ As to the merits of the *quo warranto* challenge, we observe that, via the Investigating Grand Jury Act, the Legislature has charged supervising judges with the substantial responsibility of maintaining the required confidentiality of grand jury proceedings, on pain of contempt sanctions. *See* 42 Pa.C.S. § 4549(b). A supervising judge also is authorized to bring alleged offenses to the attention of an investigating grand jury. *See id.* § 4548(a). Finally, supervising judges enjoy general powers required for or incidental to the exercise of jurisdiction. *See* 42 Pa.C.S. § 323.

We view these provisions, collectively, as affording sufficient authorization to a supervising judge—and, in fact, as creating the necessity—to appoint a special prosecutor in scenarios in

5. Rule 3331 permits timely review of such orders by authorizing the filing of challenges within ten days after entry. *See* Pa.R.A.P. 3331(a) (cross-referencing Pa.R.A.P. 1512(b)(3)).

which a grand jury may be considering potential criminal conduct on the part of an Attorney for the Commonwealth (as defined in the Investigating Grand Jury Act, *see* 42 Pa.C.S. § 4542) or a closely affiliated official. Indeed, as the supervising judge and the Special Prosecutor presently argue, Section 323 serves to codify aspects of the courts' non-particularized powers, often referred to as inherent, implied, and/or incidental in nature. Notably, these have been relied upon, in many other jurisdictions, as support for the court appointments of special prosecutors.[6] Although the structure imposed by the now-lapsed Independent Counsel Authorization Act or a statutory analogue might be preferable, we conclude that the prevailing absence of statutory guidance is not disabling in

6. *See, e.g., Young v. U.S. ex rel. Vuitton et Fils S.A.,* 481 U.S. 787, 795, 107 S.Ct. 2124, 2131–32, 95 L.Ed.2d 740 (1987); *In re Disqualification of Cirigliano,* 105 Ohio St.3d 1223, 826 N.E.2d 287, 288 (2004) ("[C]ourts of common pleas possess inherent power to appoint special prosecutors in criminal matters." (quoting *State ex rel. Master v. Cleveland,* 75 Ohio St.3d 23, 661 N.E.2d 180, 184 (1996))); *State ex rel. Friedrich v. Circuit Court for Dane Cnty.,* 192 Wis.2d 1, 531 N.W.2d 32, 38 (1995) (explaining that, "despite the existence of statutes authorizing circuit courts to appoint special prosecutors, the courts' power to appoint special prosecutors is gleaned from the courts' inherent power" (citation omitted)); *State v. Hoegh,* 632 N.W.2d 885, 890 (Iowa 2001) ("We confirm the inherent power of district courts to appoint special prosecutors when necessary for the administration of justice."); *State ex rel. Goodwin v. Cook,* 162 W.Va. 161, 248 S.E.2d 602, 607 (1978) ("Other jurisdictions confronted with the problem of the temporary disqualification of the prosecuting attorney have generally sanctioned the authority of the court, under its inherent power to administer the judicial system, to appoint a special prosecutor.... This appears to be the common law rule." (citations omitted)); *Weems v. Anderson,* 257 Ark. 376, 516 S.W.2d 895, 898 (1974) (observing that a circuit court had the inherent power to appoint a special prosecutor, notwithstanding the lack of specific statutory authority); *State v. Ellis,* 184 Ind. 307, 112 N.E. 98, 102 (1916) (collecting cases for the proposition that a court has authority to appoint a special prosecutor, where the regular one was disqualified); *Taylor v. State,* 49 Fla. 69, 38 So. 380, 383–85 (1905) (same); *State v. Eckelkamp,* 133 S.W.3d 72, 74 (Mo.Ct.App.2004) ("[T]he power to appoint a special prosecutor is not limited by the statutory grounds ...; rather, it is a power inherent in the court, to be exercised in the court's sound discretion, when for any reason, the regular prosecutor is disqualified."). *See generally* 27 C.J.S. DISTRICT AND PROSECUTING ATTORNEYS § 88 (2014) ("The absence or incapacity of the regular incumbent is ordinary grounds, pursuant to statute *or under a court's inherent or constitutional powers,* for appointment of a substitute district or prosecuting attorney[.]" (emphasis added)).

terms of the essential appointment power of grand jury supervising judges.[7]

■ Regarding the separation-of-powers concern, this Court has strongly defended the independent role of the judiciary in vindicating the authority ascribed to it by the Constitution, particularly as relates to conduct which is contemptuous of a court. *See, e.g., Commonwealth v. McMullen,* 599 Pa. 435, 448, 961 A.2d 842, 850 (2008) (holding that a statutory limitation on punishment for indirect criminal contempt was unconstitutional, as it offended the inherent authority of courts to punish such affronts).[8] The United States Supreme Court has also recognized the need for the judiciary to uphold its own authority in the contempt arena. *See, e.g., Young,* 481 U.S. at 796, 107 S.Ct. at 2131–32. Along these lines, that Court has sanctioned the appointment of special prosecutors to redress contempt, explaining:

The ability to punish disobedience to judicial orders is regarded as essential to ensuring that the Judiciary has a means to vindicate its own authority without complete de-

7. We note that the Special Prosecutor himself has seen fit to submit to a particular safeguard and check on the power with which he was invested, as he has not sought to initiate an affirmative prosecution but, rather, he has acceded to the submission of the grand jury presentment to the duly elected district attorney in Montgomery County for her consideration.

Responsive to Mr. Justice Baer's concurrence, we do not presently vindicate the pursuit of an actual prosecution by a special prosecutor appointed by a supervising judge, since those are not the facts before us. *See Maloney v. Valley Med. Facilities, Inc.,* 603 Pa. 399, 411, 984 A.2d 478, 485–86 (2009) (explaining that the holding of a decision is to be read against its facts). Rather, the propriety of such a prosecution would appear to remain an issue of first impression in this Court. While we recognize that many of the authorities we have referenced have sanctioned actual prosecutions, such an imperfect overlap (between the circumstances involved in cases surveyed and those presently before a reviewing court) often occurs within any survey of a legal landscape. In any event, litigants in Pennsylvania will be free to bring to the courts' attention any material distinctions bearing on whether a special prosecutor may exercise the broader range of powers, upon an appropriate challenge to such exercise. *Cf. id.* at 419, 984 A.2d at 491.

8. This author took a different view, in *McMullen,* concerning the Court's decision to invalidate the statute. *See McMullen,* 599 Pa. at 457–59, 961 A.2d at 855–56 (Saylor, J., concurring and dissenting).

pendence on other Branches. "If a party can make himself a judge of the validity of orders which have been issued, and by his own act of disobedience set them aside, then are the courts impotent, and what the Constitution now fittingly calls 'the judicial power of the United States' would be a mere mockery." *Gompers v. Bucks Stove & Range Co.*, 221 U.S. 418, 450, 31 S.Ct. 492, 501, 55 L.Ed. 797 (1911). As a result, "there could be no more important duty than to render such a decree as would serve to vindicate the jurisdiction and authority of courts to enforce orders and to punish acts of disobedience." *Ibid.* Courts cannot be at the mercy of another Branch in deciding whether such proceedings should be initiated. The ability to appoint a private attorney to prosecute a contempt action satisfies the need for an independent means of self-protection, without which courts would be "mere boards of arbitration whose judgments and decrees would be only advisory." *Ibid.*

*Id.* (footnote omitted).

For the above reasons, we reaffirm the position taken by the Court in *Dauphin County* and conclude that the supervising judge acted within his authority and sound prerogative in appointing the Special Prosecutor. *See Dauphin County*, 610 Pa. at 318, 19 A.3d at 504 ("When there are colorable allegations or indications that the sanctity of the grand jury process has been breached and those allegations warrant investigation, the appointment of a special prosecutor to conduct such an investigation is appropriate.").[9] We also agree with the supervising judge and the Special Prosecutor that the *Smith* decision is distinguishable on the basis that it involved an unlawful "special grand jury" and the displacement of a non-conflicted elected official from the performance of his duties according to an established statutory regime.[10]

9. In this regard, we differ with Justice Baer's position that appointees should be characterized as "special masters" rather than "special prosecutors." Because the preparation and submission of presentments to investigating grand juries are actions reserved to prosecutors, *see* 42 Pa.C.S. § 4551(a), in our considered judgment, the term "special prosecutor" is most appropriate here.

10. *See Smith*, 408 Pa. at 556–57, 185 A.2d at 137; *see also Gwinn v. Kane*, 465 Pa. 269, 280–81, 348 A.2d 900, 906–07 (1975) (characterizing

Finally, we differ with Attorney General Kane's position that a distinction should be made between current and historical breaches of grand jury secrecy. Although a supervising judge, in his or her discretion, may regard a historical breach in a different light than a present one, both are equally affronts to the dominant and ongoing requirement of confidentiality which supervising judges are charged with enforcing. *Cf. United States v. Procter & Gamble Co.*, 356 U.S. 677, 682, 78 S.Ct. 983, 986, 2 L.Ed.2d 1077 (1958) ("The grand jury as a public institution serving the community might suffer if those testifying today knew that the secrecy of their testimony would be lifted tomorrow."). Moreover, sitting supervising judges are in the best position to address even historical breaches, since such infractions arise from confidential proceedings with which such jurists are most intimately associated, and particularly where the previous supervising judge is unavailable. Again, although we recognize that there are legitimate concerns arising out of a judicial appointment of a special prosecutor, we follow the approach of the United States Supreme Court and the many other jurisdictions which have found such appointments proper as an essential means to vindicate the courts' own authority. *See, e.g., Young*, 481 U.S. at 796, 107 S.Ct. at 2131–32; *see also supra* note 6.[11]

The request for *quo warranto* relief is denied.

portions of *Smith* as *dicta,* including its suggestion that the office of special prosecutor could not be constitutionally sanctioned). *See generally Maloney,* 603 Pa. at 415, 984 A.2d at 488 (explaining that the holding of a decision is to be read against its facts).

11. The concurrences discuss a range of matters beyond the subject of this opinion. Presently, our own review is confined to the focused *quo warranto* challenge to the supervising judge's power to appoint a special prosecutor which has been put before us. Nevertheless, we take this opportunity to observe that, from our perspective, the remarks of our colleagues in concurrence do not reflect a developed consideration of the collateral matters which they raise.

For example, in terms of the responsive commentary raising *ex parte* concerns, it is essential to bear in mind that the grand jury process, by its nature, requires confidential interaction and communications between a supervising judge and attorneys for the Commonwealth. Subjects of investigations are not privy to these interactions precisely because they are not parties, *accord* 42 Pa.C.S. § 4549(b) (requiring secrecy in grand jury matters), and it follows that the communications

Justice EAKIN joins this opinion.

Justice BAER files a concurring opinion.

Justice STEVENS files a concurring opinion.

Justice TODD files a dissenting opinion.

Justice BAER, concurring.

In 2014, information was leaked to the media that was subject to secrecy in connection with a statewide grand jury that was sitting in 2009 before Judge Barry Feudale (hereafter, the Feudale grand jury).[1] Judge Feudale is no longer part of Pennsylvania's active judiciary and the grand jury over which he presided has long since concluded. Judge William R. Carpenter was the supervising judge of the thirty-fifth statewide investigating grand jury, which was empaneled in January 2013 and has recently concluded. He determined that there were reasonable grounds to believe an investigation should be conducted to determine the source of the 2014 leaks of the secret testimony from the 2009 Feudale grand jury. To this end, he appointed Thomas E. Carluccio as a "special prosecutor" to conduct an investigation into contempt incident to any grand jury secrecy leak and crimes related thereto, and provided Mr. Carluccio with expansive prosecutorial powers.

cannot be deemed *"ex parte"* in the usual sense of the term. In other words, the general prohibition of communications between a judge and less than all parties—as well as the due process concerns raised in the concurring opinions—ordinarily would not be relevant merely because a subject of the investigation is absent from some part of the inquiry. Moreover, to the extent a particular action by a supervising judge may be subject to challenge by an individual, it would be necessary to consider whether confidentiality was employed in the criticized proceedings for the protection of grand jury witnesses (as such protection is one of the important aims of the Legislature in providing for grand jury secrecy).

Beyond observing the incompleteness in the development of the collateral issues raised by way of concurrence, we decline to engage in a further dialogue concerning matters which are not presently before the Court.

1. *See* 42 Pa.C.S. § 4549(b) (establishing grand jury secrecy and providing that any person who violates secrecy "shall be in contempt of court.").

The Attorney General, Kathleen G. Kane, argues that there was no legal authority for the appointment of a special prosecutor, and that the designation violates the constitutional separation of powers in that it infringes on her office's investigatory and prosecutorial function. To vindicate her position that Judge Carpenter exceeded his powers by appointing Mr. Carluccio, the Attorney General brings this *quo warranto* action presenting the narrow legal issue of whether this Court should quash the appointment of the special prosecutor by Judge Carpenter in connection with alleged leaks from the Feudale grand jury, and, in accord with that quashal, suppress the proceedings as void *ab initio*.

On the limited issue presented, I agree with the Opinion Announcing the Judgment of the Court (OAJC) that *quo warranto* relief should be denied because the supervising judge possessed inherent authority to appoint an individual to investigate the leak of grand jury testimony to protect the sanctity of the prior grand jury proceeding and to remedy any breach of statutorily mandated secrecy through contempt findings.[2] I write separately because I believe that Judge Carpenter's appointment order, which the OAJC seemingly endorses, attempted to bestow upon Mr. Carluccio power that far exceeded the authority to investigate contempt and to report his findings to the court. It is only because Judge Carpenter had the power to appoint a person to investigate contempt, Mr. Carluccio acted in accord with that power, and because Mr. Carluccio did not ultimately employ that aspect of the excessive grant of power by attempting to prosecute the Attorney General, instead submitting the grand jury present-

**2.** The Attorney General has argued that Judge Carpenter lacked authority to appoint a special prosecutor to investigate the breach of grand jury secrecy because it was related to the concluded grand jury. While I agree with the Attorney General that leaks of grand jury information should be vindicated by the supervising judge of that grand jury, that may not always be possible. In this case specifically, the Feudale grand jury has concluded and Judge Feudale is no longer part of the active judiciary. Under these circumstances, it is appropriate for a different supervising judge to oversee the investigation into the source of the leaks.

ment to the District Attorney of Montgomery County for consideration, that I am able to join the OAJC's mandate.

When a court seeks to engage in fact-finding, it employs a special master, not a special prosecutor. The function of a special master is to gather necessary factual information, consider pertinent legal questions, and provide the court with recommendations.[3] Special masters operate as an arm of the court, investigating facts on behalf of the court and communicating with it to keep it apprised of its findings; they do not act as independent prosecutors.

Turning to the appointment at issue in this case, it is important to keep in mind that the consequence for violating grand jury secrecy is contempt of court, *see* 42 Pa.C.S. § 4549(b). The authority to punish for contempt is a right that is "inherent in courts and is incidental to the grant of judicial power under Article 5 of our Constitution." *Commonwealth v. McMullen*, 599 Pa. 435, 961 A.2d 842, 849 (2008).

---

**3.** *See e.g. In re J.V.R.*, No. 81 MM 2008, 2/11/2009 (*per curiam*) (noting that the Supreme Court appointed a special master to review all Luzerne County juvenile court adjudications and dispositions that had been affected by a trial judge's criminal actions and to make recommendations to the Court concerning appropriate remedial actions); *Commonwealth v. Roney*, 622 Pa. 1, 79 A.3d 595 (2013) (Saylor, J., dissenting) (acknowledging that the Supreme Court appointed a special master to consider a petition challenging Philadelphia's compensation system for defense counsel in capital criminal cases); *Levy v. Senate of Pennsylvania*, 619 Pa. 586, 65 A.3d 361 (2013) (approving the factual determinations and legal conclusions made by a special master appointed by the Commonwealth Court to review *in camera* particular documents allegedly subject to the Pennsylvania Right to Know Act); *Annenberg v. Commonwealth*, 562 Pa. 570, 757 A.2d 333 (1998) (appointing a special master to make findings of fact and conclusions of law regarding whether a taxing statute violated the Commerce Clause of the United States Constitution); *Pa. State Ass'n of County Comm'rs v. Commonwealth*, 545 Pa. 324, 681 A.2d 699 (1996) (appointing a special master to prepare recommendations to the Supreme Court regarding the implementation of the unified judicial system); *Commonwealth v. Banks*, 612 Pa. 56, 29 A.3d 1129 (2011) (appointing a trial court judge as a special master to make findings of fact and conclusions of law relating to a challenge to the competency of a defendant to be executed). *See also In re City of Pittsburgh*, 143 Pa.Cmwlth. 618, 600 A.2d 630, 632 (1991) (holding that "[c]ourts historically possess the inherent authority to appoint masters to assist them in performing their various functions").

Under circumstances where a judge finds there are reasonable grounds to believe a further investigation is warranted into allegations of a violation of grand jury secrecy, an indirect criminal contempt of court, it would be appropriate to appoint a special master to assist the judge in this factual endeavor. This is precisely what occurred in *In re Dauphin County Fourth Investigating Grand Jury*, 610 Pa. 296, 19 A.3d 491 (2011), notwithstanding, in my view, this court's unfortunate use of the term "special prosecutor," which has contributed to the confusion requiring this explanation.

In *Dauphin County*, we remanded to the supervising judge of a sitting grand jury for an evidentiary hearing relating to allegations of a breach of grand jury secrecy. *Id.* at 497. Following the evidentiary hearing, this Court again considered the matter and again remanded, but this time to the President Judge of the *Dauphin County* Court of Common Pleas to appoint a "special prosecutor" for the specific purpose of "conduct[ing] further inquiry into the allegations of violations of the secrecy provisions of the Investigating Grand Jury Act ... and to oversee such inquiry ..." *Id.* at 498. Notwithstanding what I believe to be the imprecise terminology of "special prosecutor," the limited purpose for which we authorized the appointment indicates that our intent was a narrow fact-finding mission to delve into allegations of contempt. The special prosecutor we referenced should more properly have been referred to as a special master.

In accord with the restricted nature of our mandate, the President Judge appointed a special master under the misnomer of "special prosecutor," with a narrowly defined mission and authority: to conduct inquiry into allegations of violations of grand jury secrecy; upon approval of the court, to retain reasonable investigative, clerical, and secretarial services to facilitate his duties; to have the proceedings transcribed; to review the grand jury transcripts; to keep the court apprised of the status of the investigation; to present a final report of findings and reasons therefore; and to maintain all matters under seal. *Id.* at 499. Importantly, the order also provided that if the "special prosecutor" required compelled testimony

or documents, he had to petition the court for the issuance of subpoenas and the scheduling of a hearing with all of the trappings of due process. *Id.*

Therefore, *In re Dauphin Co.*, despite what I believe was loose and unfortunate prose, provides authority for the appointment of a special master for the limited purpose of determining the source of illegal leaks of grand jury information with limited investigating functions, under court supervision, and with full due process rights afforded to all involved. Notably, the appointing judge in that case did not authorize the special master to utilize the investigative authority of a grand jury, generally to investigate crimes, or to prosecute crimes.

Judge Carpenter's order appointing the special prosecutor in the matter before us was in part consistent with my understanding of the use of a special master to investigate contempt of court (which allows me to join the mandate herein), and, in part, inconsistent therewith because its expansive mandate gave the "special prosecutor" excessive investigative and prosecutorial power. Specifically, Judge Carpenter's order provided that the special prosecutor was appointed to investigate and prosecute any offenses related to "any alleged illegal disclosure of information protected by the law," including violations of grand jury secrecy, 42 Pa.C.S. § 4549(b), obstructing the administration of law or other government function, 18 Pa.C.S. § 5101, or "any other applicable offense."

The supervising judge further ordered that the "special prosecutor" was authorized to use the sitting grand jury to investigate such crimes; request immunity orders from the Attorney General; to have "day-to-day independence" and "independent prosecutorial discretion whether, which and when any potential witness should be brought before the Grand Jury and/or whether, which and when charges should be brought, including contempt of court;" to consult with members of the Office of Attorney General; to respond to interference with his investigation by investigating and prosecuting crimes committed in connection with the interference

(including perjury and intimidation of witnesses); to provide the supervising judge periodic summaries of his progress; and submit a report setting forth his findings and recommendations.

In addition to penning an inappropriately broad order, Judge Carpenter also permitted improper and relatively constant *ex parte* communication between Mr. Carluccio and himself, offending notions of fundamental fairness. While such communication may have been understandable if this scenario was simply one involving a special master, here, as noted, the court attempted to vest Mr. Carluccio with the vast general authority of a prosecutor. Additionally, even when it became apparent that the investigation had focused on the Attorney General, the supervising judge conducted *ex parte* hearings with the special prosecutor and selected witnesses, resulting in orders to the detriment of the Attorney General, all the while engaging the special prosecutor *ex parte* and excluding the Attorney General from both the court conferences and the *ex parte* hearings. Such insular *ex parte* hearings had none of the trappings of due process, and, were not confined to grand jury matters, but rather, resembled the actions of a district attorney in an adversarial, as opposed to investigative, role, which requires due process.

To the extent the order under review herein and the process employed authorized the special prosecutor to investigate the source of illegal leaks of grand jury secrecy, as contempt of court, it may be consistent with the general use of special masters to assist the judiciary in fact-finding, and with the order we approved in *In re Dauphin Co.* However, I am aware of no authority for Judge Carpenter to authorize the special prosecutor to utilize the sitting grand jury for this purpose, to subpoena witnesses independently, to investigate crimes, to determine what charges should be brought, or to prosecute anyone. Such a sweeping grant of prosecutorial authority finds no support in *In re Dauphin Co.* or any case cited therein. *See In re: County Investigating Grand Jury VIII, 2003,* 2005 WL 3985351 (Pa.Com.Pl.2005); *Castellani v. Scranton Times,* 598 Pa. 283, 956 A.2d 937 (2008). Moreover, I

believe it is likely that Judge Carpenter and Mr. Carluccio's constant collusion as well as the *ex parte* hearings in prosecutorial rather than contempt matters may have violated the Attorney General's due process rights.

While I am obviously troubled by the supervising judge's attempt to broaden the scope of the special prosecutor/master's role in this matter, and I believe that any apparent endorsement by the OAJC of these actions sets a potentially dangerous precedent regarding the appropriate scope of power of future supervising judges, I am in a concurring, rather than a dissenting posture, because of what the special prosecutor ultimately did with this sweeping grant of authority, or, rather, what he did not do. Specifically, notwithstanding the authorization of prosecutorial discretion allowing him to bring charges and prosecute offenders, the special prosecutor did neither of these. Instead, he turned the matter over to the Montgomery County District Attorney, the proper executive authority, to investigate independently crimes other than contempt that were allegedly committed in the course of his investigation and to decide whether to prosecute.[4] Likewise, my concerns with the process do not demand a different result. If charges are ultimately brought against the Attorney General, due process in such proceedings will be required and, thus, any violations through the prior proceedings will be rendered harmless.

I therefore concur that the Attorney General is not entitled to *quo warranto* relief on the narrow issue presented to this court because Judge Carpenter had the authority to appoint a special master to investigate contempt, and, in the end, that was encompassed within Mr. Carluccio's actions.

4. The grand jury presentment found reasonable grounds to believe the Attorney General was involved in the following crimes: perjury, 18 Pa.C.S. § 4902; false swearing, 18 Pa.C.S. § 4903; official oppression, 18 Pa.C.S. § 5301; obstructing the administration of law or other governmental function, 18 Pa.C.S. § 5101; and criminal contempt of court. Notably, however, the supervising judge has indicated that because contempt of court is normally handled by the court, it was not specifically referred to the district attorney.

Justice STEVENS, concurring.

Until the Legislature provides appropriate statutory guidelines for the appointment of special prosecutors, we look to the Pennsylvania Constitution, *In re Dauphin County Fourth Investigating Grand Jury,* 610 Pa. 296, 19 A.3d 491 (2011), and the former Independent Counsel Authorization Act, *infra,* for such guidance.

In this case there are serious questions that the proceedings have been tainted by vagueness in the manner of the appointment of the special prosecutor, a lack of due process afforded to the Attorney General, overbroad authority given to and exercised by the special prosecutor, and questionable sealing of records. My concern is with the process, not with any one individual.

I join the Majority's holding that, as a general matter, a supervising judge of a grand jury has the inherent authority to appoint a special prosecutor where there are colorable allegations that the sanctity of the grand jury process has been breached by an attorney for the Commonwealth and that those allegations warrant investigation.

On May 29, 2014, William R. Carpenter, the supervising judge, filed an order under seal[1] in the Montgomery County Court of Common Pleas indicating that, after a "preliminary investigation," there are "reasonable grounds to believe a further more substantive investigation is warranted into allegations that statewide Grand Jury secrecy may have been compromised." Supervising Judge's Order filed 5/29/14 at 1.

The supervising judge did not provide any information as to the scope of his "preliminary investigation," what facts led him to conclude there were reasonable grounds to believe further investigation was necessary, or as to the target of the investigation. Additionally, in this same order, the supervising judge appointed Thomas E. Carluccio, Esquire, as the special prose-

1. Although this order was originally filed by the supervising judge under seal, by *per curiam* order entered on January 20, 2015, this Court directed the unsealing of all the filings in this matter, including the Attorney General's appellate brief. The Attorney General attached a copy of the May 29, 2014 order to her appellate brief as Exhibit A.

cutor and set forth a broad scope of Attorney Carluccio's duties.

However, the supervising judge provided no information as to the manner in which Attorney Carluccio was chosen to fulfill this position and, more specifically, gave no information regarding Attorney Carluccio's qualifications to act in the capacity of a special prosecutor as would have been required under the now sunsetted Independent Counsel Authorization Act.[2]

The record additionally contains a letter, dated May 29, 2014, authored by the supervising judge and sent to former Chief Justice Ronald D. Castille with a notation that a carbon copy was being sent to Attorney Carluccio.[3] In the letter, the supervising judge indicated he was "appointing a Special Prosecutor to investigate an allegation that secret Grand Jury information from a prior Grand Jury was released by someone in the Attorney General's Office." Supervising Judge's Letter dated 5/29/14 at 1. He specifically indicated he was appointing Attorney Carluccio as the special prosecutor. *See id.*

Apparently unsure of his own authority to take this action, the supervising judge concluded the letter by indicating "[p]lease advise if you feel that I am in error or have exceeded

2. In 1998, the Legislature passed the Independent Counsel Authorization Act (ICAA), 18 Pa.C.S. § 9301 *et seq.*, which provided for, *inter alia*, a panel comprised of one judge from the Commonwealth Court and two judges from the courts of common pleas, who were chosen by lot. The ICAA gave the Commonwealth's general counsel authority to appoint a special investigator to conduct a preliminary investigation, and to appoint an independent counsel where there were "reasonable grounds to believe further investigation [was] warranted." 18 Pa.C.S. § 9315(a)(1). In appointing an independent counsel, the ICAA set forth qualifications to be considered by the panel. 18 Pa.C.S. § 9319. Additionally, the ICAA set forth a legislatively-approved process to investigate criminal allegations made against the Attorney General. However, the ICAA contained a sunset provision providing for the expiration of the statute in 2003, and there has been no further legislative action in this regard.

3. The Attorney General attached a copy of the May 29, 2014 letter to her appellate brief as Exhibit B. Also, the letter was referenced in open court by the special prosecutor and several Justices at this Court's March 11, 2015 oral argument session.

my authority as the Supervising Grand Jury Judge." *Id.* The record provides no further information on this point.

The next flaw in the advancement of this case is evidenced by the fact that there was a hearing from which a standing protective order against the Attorney General was entered.[4]

I find nothing in the record to indicate the Attorney General's Office had an opportunity to be heard at a meaningful time and in a meaningful manner prior to the entry of the protective order. Thus, questions arise as to whether due process was provided to the Attorney General and her office prior to the entry of a protective order.

In *In re Dauphin County, supra,* a special master (referred to as a "special prosecutor") was appointed. But in that case the authority of the "special prosecutor" was severely limited, provided for due process and was careful to be in accord with the separation of powers principle,[5] unlike the appointment of the special prosecutor in this case. Here, the special prosecutor took on a role of a magnitude more properly reserved for an elected district attorney and well beyond the purpose of determining the source of illegal leaks of grand jury information.

Finally, I have concerns about the sealing process, which has occurred throughout this case. While the sealing of grand jury matters in the lower courts and this Court generally serves a legitimate purpose, such as protecting witnesses and the integrity of the process, not all grand jury material automatically requires secrecy. Particularly when there are allegations that a specific grand jury investigation is politically

4. The protective order was recognized and referenced by the special prosecutor in his answer to the Attorney General's *quo warranto* petition filed with this Court. The answer was filed as a pleading initially under seal; however, as indicated *supra,* by order filed on January 20, 2015, this Court unsealed such filings, including the answer. Additionally, in open court at the March 11, 2015 oral argument session, there were discussions among several of the Justices and the special prosecutor of the aforementioned hearing. In particular, this Justice questioned the special prosecutor regarding the holding of an *ex parte* hearing.

5. *See* Article V, Sections 1 and 10 of the Pennsylvania Constitution.

or personally motivated, as has been alleged by the Attorney General in this case, a blanket and automatic sealing of all materials is inappropriate.

Simply put, transparency promotes accountability.

In light of the now-lapsed Independent Counsel Authorization Act, *supra,* and the absence of an analogous statute providing Legislative guidance as to the manner and structure of such appointments, I write separately to urge the Legislature to revisit this matter. It is imperative that the process of the appointment of a special prosecutor in a case such as this be in accordance with the constitutionally required separation of powers.

There must be defined limits on the powers of a special prosecutor. While I agree a supervising judge has the authority to appoint a special prosecutor, here the scope of the powers of the special prosecutor took on the role of a *de facto* district attorney, which in my opinion, is not permissible. The process undeniably becomes more complicated when the judicial branch is making such an appointment with the intent of investigating the Attorney General, who is an elected member of the executive branch.

This case illustrates the need for the Legislature to provide a transparent, orderly method of appointing special prosecutors, sensitive to due process rights and appropriate transparency, thereby creating a fair and open system. In my view, this would lead to greater consistency and confidence in the appointment of special prosecutors and, ultimately, in the judicial process.

Justice TODD, dissenting.

Under our time-honored tripartite system of government, the judiciary does not prosecute. Eschewing this historic system of checks and balances, and the traditional approach to the investigation of alleged breaches of confidentiality in grand jury proceedings, the Opinion Announcing the Judgment of the Court ("OAJC") instead seemingly embraces a novel extension of the courts' appointment powers. In so doing, it has

unnecessarily blurred the traditional lines of demarcation of power between the executive and judicial branches of our government and has given largely unfettered power to a judicial special prosecutor. In my view, this approach upends the historic bipartite functioning of grand jury proceedings by vesting the traditionally separate roles of advocate prosecutor and neutral supervising judge in one branch of government. In contrast, the appointment of a special master, a process currently embraced by our Court, preserves and fully vindicates the integrity of the confidentiality of grand jury proceedings and accords respect to the enumerated powers of our sister branches of government.

Before turning to the background underlying this matter, it is important to understand exactly what is at issue in this matter, and what is not in question. First, there is no contest as to the importance of conducting grand jury proceedings in secrecy, and that such secrecy is indispensable to the functioning of the grand jury. Second, it is beyond dispute that those who breach the confidentiality of grand jury proceedings should be punished for such violations. Third, there is little question that a judge overseeing a grand jury may appoint an individual to conduct inquiry into allegations of violations of the secrecy of grand jury proceedings, including the provision of a staff, the review of existing transcripts and physical evidence, the compelling of testimony and the production of documents, and the issuance of a final report including findings and reasoning for such findings. *In re Dauphin County Fourth Investigating Grand Jury*, 610 Pa. 296, 19 A.3d 491 (2011).

Currently before our Court, however, is the discrete question of whether a judge overseeing a grand jury may authorize a "special prosecutor" to not only conduct inquiry into alleged grand jury confidentiality violations and to issue findings and a report, but, to go further, and use the grand jury process both to obtain a presentment and to prosecute.[1] It is this

1. The OAJC notes that the special prosecutor's work culminated in a grand jury presentment recommending the filing of various criminal charges against the Attorney General, and that the special prosecutor

unprecedented extension of traditional judicial power that is before us.

By way of background, the role of the grand jury traditionally has been prosecutorial, performed principally by the executive branch, and supervised by the judicial branch. The early grand jury in England served two primary functions, to accuse criminals and to extend the central government throughout England. *Kadish, Behind the Locked Door of an American Grand Jury: Its History, Its Secrecy, and its Process*, 24 Fla. St. U.L.Rev. 1, 5 (Fall 1996). Pennsylvania's early experience was similar, with the grand jury serving to screen criminal accusations but, consistent with our ultimate separation from the crown, it also played an active role in voicing dissatisfaction with government. *Id.* at 10–11. As noted by our Court in *Commonwealth v. McCloskey*, 443 Pa. 117, 277 A.2d 764, 771–72 (1971), in most cases, an appropriate prosecuting official begins a criminal action with a complaint. Exceptions to the norm, however, include where a district attorney or attorney general submits a bill to a grand jury without a previous binding over or commitment of the accused. The "procedure in such cases, however, is under supervision of the court, and if the process and power is misapplied[,] the court will vindicate itself in restraining its exercise." *Id.* at 771. We also noted that a prosecutor's submission of an investigating grand jury presentment to an indicting grand jury must be with leave of court. *Id.* In explaining the history of the grand jury in Pennsylvania, the *McCloskey* Court noted that an investigating grand jury was justified to investigate criminal matters of general importance impacting the community, rather than the acts of individuals, including summoning and sending before the grand jury witnesses needed for an

submitted the presentment to the district attorney in Montgomery County, but offers that the special prosecutor "has seen fit to submit to a particular safeguard and check on the power with which he was invested, as he has not sought to initiate an affirmative prosecution." OAJC at 394, 112 A.3d at 630. Interestingly, however, given its expansive view of the judiciary's authority to make such appointments, the OAJC does not explain what interests the special prosecutor was safeguarding, why his power warranted checking, or why exercising restraint was apparently salutary.

investigation. Concerns regarding the abuse of power by a grand jury and overreaching was the reason that a court was responsible for regulating the scope of the inquiry. *Id.* at 773. Indeed, the court was deemed responsible to "scrutinize the prosecuting official's petition for summoning the jury." *Id.* Thus, as a historical matter, our courts have largely played a gatekeeping and supervisory role in grand jury proceedings, rather than an investigative or prosecutorial role. *Id.* at 775.

Our prior case law is entirely consistent with this historical approach to the functioning of a grand jury, and is contrary to the OAJC's unfamiliar and unnecessary extension of judicial power in the area of grand jury proceedings. For example, in *Smith v. Gallagher*, 408 Pa. 551, 185 A.2d 135 (1962), our Court disapproved of the judicial empanelment of a grand jury and appointment of a special prosecutor to investigate crimes in Philadelphia in lieu of the district attorney. In doing so, we reasoned that the county judge authorizing the grand jury was not assigned to grand jury matters; that the district attorney denied that he was unable to perform his job; that there were mechanisms for the intervention of the Attorney General; and, most critically, that the authority granted to the special prosecutor was unprecedented and overly broad. In finding the actions by the lower tribunal to be illegal, we stressed that "there is no public office in Pennsylvania known as Special Prosecutor." *Id.* at 149. While, admittedly, the factual circumstances in *Smith* and this matter are dissimilar, nevertheless, our eschewing the notion of the judiciary appointing a prosecutor is consistent with a historical understanding of the prosecutorial nature of the grand jury and the respective roles of the executive and judicial branches.

Our decision in *Dauphin County*, which the OAJC "reaffirms," further bears this out. Important for purposes of this matter, and contrary to the OAJC's implication, no question of the ability of a "special prosecutor" to utilize a grand jury, and to prosecute to the full extent of the law, was remotely present in *Dauphin County*. Rather, what was at issue was the authority of the court to appoint a "special prosecutor" to investigate and gather information—no *prosecutorial* power

was granted to this special prosecutor and none was implicated. After a careful reading of the opinion, it is clear that the title "special prosecutor" was a misnomer, as observed by Justice Baer in his Concurring Opinion, and that the fact-gathering and reporting position appointed by the Court was more akin to a special master. Indeed, in that decision, our Court made reference to two other instances involving investigations of breaches of grand jury secrecy where a "special prosecutor" was appointed, but those too were only for the purpose of investigation and the submission of reports and recommendations. *Id.* at 504–509 (citing *In re County Investigating Grand Jury VIII*, 2005 WL 3985351 (Pa.Com.Pl. filed Oct. 25, 2005) and *Castellani v. Scranton Times*, 598 Pa. 283, 956 A.2d 937 (2008)). Thus, to "reaffirm" *Dauphin County* is simply to embrace the existing and uncontroversial power of our courts to appoint an investigator and reporter—*Dauphin County* stands for nothing more.

Further, our Court in *Dauphin County* distinguished the roles of judicial investigator and executive prosecutor. In that case, the Dauphin County District Attorney sought to impanel a grand jury regarding alleged improprieties involving applicants for a slot machine license and approval of that license by the Pennsylvania Gaming Control Board. Subsequently, the subject of the grand jury proceedings alleged that protected information regarding the grand jury had been disclosed through media sources. After the issuance of a presentment against the license applicants, and various proceedings and appeals, our Court remanded the matter for the appointment of a special prosecutor to conduct inquiry into the alleged breach of confidentiality. Upon the conclusion of his investigation, the special prosecutor issued a report finding the source of the information disclosed to newspaper reporters could not be determined with certainty, in part due to the reporters' assertion of privilege under the Shield Law, which protects them and their sources.

On subsequent appeal, our Court not only made clear that the confidentiality that was essential to grand jury proceedings "call[ed] for a strong judicial hand in supervising the

proceedings," but that when allegations of a breach of secrecy are alleged, the judiciary should investigate. *Id.* at 503–04 ("When there are colorable allegations or indications that the sanctity of the grand jury process has been breached and those allegations warrant investigation, the appointment of a special prosecutor to conduct such an investigation is appropriate."). In so doing, however, we strongly suggested a distinction between investigator and prosecutor when we discussed the role of the Shield Law, and clearly envisioned the Commonwealth, and not the judiciary, as the body to be engaged in prosecution:

> The foreseeable situation described in *Castellani*—the tension that might arise *where the Commonwealth sought to obtain a reporter's evidence concerning the source of a grand jury leak in a criminal investigation or prosecution of that leak*—is again not squarely before us *due to the limited inquiry ultimately undertaken by Special Prosecutor Blakey,* who did not force the issue directly. Thus, the question of whether the protections afforded by the Shield Law may yield to the governmental interests in the investigation of alleged violations of grand jury secrecy again need not be resolved at this juncture.

*Dauphin County,* 19 A.3d at 509 (emphasis added). Indeed, we further suggested these distinct roles of judicial investigator and executive prosecutor by noting that

> Special Prosecutor Blakey's investigation and report *does not foreclose further inquiry by an appropriate investigative or prosecutorial body that may wield the authority to obtain the reporter's evidence, and that of other individuals, concerning the alleged violations of grand jury secrecy.* We leave it to those entities to determine whether further investigation or action is required.

*Id.* at 510 (emphasis added).

From the above, it is plain that the role and authority of the "special prosecutor" in *Dauphin County* was merely that of an investigator—in my view, more appropriately titled a special master—to inquire and report, rather than that of a true prosecutor, which our Court in *Dauphin County* strongly

suggested was a role for the executive branch. Thus, the OAJC's reliance upon *Dauphin County* is merely to affirm the unremarkable—the existing power of our Court to appoint a factfinder and investigator. Our decision in *Dauphin County* does not in any way, other than title, support or address the much more remarkable assertion that the judiciary has the authority to appoint a prosecutor and enlist a grand jury to prosecute and enforce any alleged breach of grand jury secrecy.

The OAJC has aptly provided the relevant factual and procedural background in this matter. *See* OAJC at 384–88, 112 A.3d at 625–27. It is important to recognize, however, the breadth of the powers granted to the special prosecutor. Although not set forth by the OAJC, Judge Carpenter's order of May 29, 2004 makes manifest the broad scope of his claimed authority to appoint a special prosecutor and the broad range of the power conferred on the special prosecutor:

> AND NOW, this 29th day of May, 2014 after "preliminary investigation"; this court in its capacity as Supervising Judge of the 35th Statewide Investigating Grand Jury, finds there are reasonable grounds to believe a further more substantive investigation is warranted into allegations that statewide Grand Jury secrecy may have been compromised: It is therefore ORDERED and DIRECTED by this Court in accordance with the authority vested in it by the 1078 Pennsylvania Investigating Grand Jury Act of 1978, 42 Pa.C.S. § 4541, *et seq.* and the procedural rules that followed (Pa.R.Crim.P. 220, *et seq.*) as well as relevant case law; that **THOMAS E. CARLUCCIO, ESQUIRE,** be and *is hereby appointed Special Prosecutor with full power, independent authority and jurisdiction to investigate and prosecute to the maximum extent authorized by law any offenses related to any alleged illegal disclosure of information protected by the law and/or intentional and/or negligent violations and rules of Grand Jury secrecy as to a former Statewide Investigating Grand Jury,* such as;

1.  42 Pa.C.S. § 4549(b) Disclosure of proceedings by participants other than witnesses ... "all such persons shall be sworn to secrecy, and shall be in contempt of court if they disclose/reveal any information which they are sworn to keep secret."

2.  18 Pa.C.S. § 5101 Obstructing administration of law or other governmental function—"a person commits a misdemeanor of the second degree if he intentionally obstructs, impairs or perverts the administration of law or other governmental function by force, violence, physical interference or obstacle, breach of official duty.

3.  Any other applicable offense.

It is FURTHER ORDERED by the Court that the Special Prosecutor:

1.  Shall use any appropriate currently empaneled Grand Jury to investigate any alleged or suspected violations of secrecy or concomitant crimes related to such.

2.  Shall have the right to request an application for an immunity order from the Attorney General.

3.  Shall have the right to employ all appropriate resources including a minimum of one investigator and if necessary, one support staff.

4.  Shall have day-to-day independence and will be free to structure the investigation as he wishes and to exercise independent prosecutorial discretion whether, which and when any potential witness should be brought before the Grand Jury and/or whether, which and when charges should be brought, including contempt of court.

5.  Shall be permitted, while serving as Special Prosecutor, to consult with past and present members of the Office of Attorney General and take such action as is necessary to ensure that matters he is investigating and/or prosecuting in his role as Special Prosecutor are brought to a successful conclusion, so long as such consultation/action does not present a conflict of interest with his duties as Special Prosecutor and/or violate the secrecy oath.

6.  Shall be empowered to respond to interference with his investigation by also having authority to investigate and prosecute crimes committed in the course of, and with the intent to interfere with the Special Prosecution's investigation such as Perjury, Intimidation of witnesses and other applicable and relevant violations of the law.

7.  Shall comply with all relevant statutory and case law as well as all applicable canons of ethics.

8.  Shall be removed from the position of Special Prosecutor only by the personal action of the Grand Jury Judge and/or the Pa Supreme Court.

9.  Shall be appointed for a period not to exceed six months from today, unless the Special Prosecutor makes a written request to the Court for an extension setting forth the reasons for the extension.

10.  The Special Prosecutor shall be compensated at the rate of $65.00 an hour to be paid by the Commonwealth of Pennsylvania.  The investigator/support staff chosen by the Special Prosecutor shall be compensated at the rate of $20.00 an hour.  All those seeking compensation shall keep detailed records of time and services rendered.  All shall provide the Supervising Grand Jury Judge with a monthly accounting of time/services rendered.

11.  Shall provide the Supervising Grand Jury Judge with periodic summaries of any progress.

12.  Submit a report addressed to the Pennsylvania Supreme Court, and the Supervising Grand Jury Judge, setting forth any findings and recommendations on any proposed statutory, rulemaking or recommended practices that would preserve the critical requirement of secrecy in Grand Jury proceedings as well as insuring the rights of defendants to a fair trial and maintaining the integrity of our Grand Juries.

Montgomery County Court of Common Pleas Order, 5/29/14 (emphasis added).

The OAJC finds authority for this order based on a constellation of statutes.  Specifically, it looks to Section 4549 of the

Investigating Grand Jury Act, which places responsibilities on judges to maintain the secrecy of grand jury proceedings, 42 Pa.C.S. § 4549(b); the ability of a judge to bring alleged offenses to the attention of an investigating grand jury, 42 Pa.C.S. § 4548(a); and a supervising judge's general powers required or incidental to the exercise of jurisdiction, 42 Pa.C.S. § 323.

In my view, those statutes do not support such authorization and appointment powers. First, it is unexceptional that a supervising judge is responsible for the confidentiality of grand jury proceedings, that persons participating in such proceedings are sworn to secrecy, and that they "shall be in contempt of court if they reveal any information which they are sworn to keep secret." 42 Pa.C.S. § 4549(b). Furthermore, an investigating grand jury has the power to inquire into crimes, such powers of inquiry include the use of the investigative resources of the grand jury to obtain initiation of civil and criminal contempt proceedings, and such offenses may be "brought to the attention of such grand jury by the court or by the attorney for the Commonwealth," 42 Pa.C.S. § 4548(a). However, in relying on this latter reference to the court's power, the OAJC conflates bringing a potential crime to the attention of the grand jury and actively prosecuting before it.

Moreover, and of critical relevance to the matter before us, by the Act's express terms, it is only an "attorney for the Commonwealth" who may be directed by the grand jury to prepare a presentment which is then submitted to the grand jury for a vote. 42 Pa.C.S. § 4551. Importantly, an "attorney for the Commonwealth" is specifically and clearly defined as the district attorney of the county where a *county* investigating grand jury is empaneled, or the Attorney General where, as here, a *statewide* investigating grand jury is at issue. 42 Pa.C.S. § 4542. There is no mechanism under the Investigatory Grand Jury Act by which the court, or an appointee thereof, may obtain a grand jury presentment.

Thus, in my view, the Investigatory Grand Jury Act does not expressly, or impliedly, provide a supervising judge with

the power to appoint an individual to act as a "special prosecutor" who is not an "attorney of the Commonwealth," or for that individual to use the grand jury process to obtain a presentment and to prosecute such proceedings. In approving such appointment here, the OAJC has disrupted the bipartite nature of grand jury proceedings, allowing a court to act *both* as neutral supervisor and executive prosecutor.

Finally, I disagree with the OAJC's conclusion that the general powers of the courts forms a basis for such appointment power. Section 323 speaks in broad terms, including the power to issue "every lawful writ and process necessary or suitable for the exercise of its jurisdiction," and for the enforcement of any order the court may issue, as well as "all legal and equitable powers required for or incidental to the exercise of its jurisdiction." 42 Pa.C.S. § 323. Yet, it is questionable whether our inherent powers may usurp or vitiate express statutory limitations on the functioning of the grand jury. 42 Pa.C.S. §§ 4548; 4551. Indeed, a review of the entire Investigatory Grand Jury Act reflects the distinct role of the executive, as prosecutor charged with guiding the grand jury process, and the role of the judiciary, as a neutral, responsible for supervising the proceedings. Moreover, any such inherent power should be viewed in the context of traditional powers and roles.

In sum, the historic structure of grand jury proceedings, our case law, the operation of the Investigating Grand Jury Act, as well as a considered avoidance of separation of powers concerns if at all possible, indicate the judiciary does not have the authority to appoint an individual to act as a prosecutor before the grand jury and use the grand jury process to obtain a presentment, and to facilitate a criminal prosecution. By contrast, I believe that a judge overseeing a grand jury may authorize an individual—a special master—to conduct inquiry into alleged grand jury confidentiality breaches, to issue findings and a report, and to remedy any breach through contempt proceedings. Accordingly, in this matter, it is my opinion that the supervising judge did not have the authority to grant the special prosecutor *prosecutorial* powers, and

therefore the presentment is without authority. As a result, I dissent from the majority's contrary conclusions in this regard.

Nevertheless, due to the circumscribed nature of the writ by which Attorney General Kane has sought relief—*quo warranto*—I conclude she is not entitled to relief. A *quo warranto* action historically has been the sole and exclusive method to test title or right to public office. *Spykerman v. Township of Chester*, 491 Pa. 470, 421 A.2d 641, 648 (1980). Yet, the writ is limited. Critically, a *quo warranto* action is addressed to "preventing a continued exercise of authority unlawfully asserted, rather than to correct what has already been done under the authority." *Id.; see also State Dental Council and Examining Bd. v. Pollock*, 457 Pa. 264, 318 A.2d 910, 913 (1974). Indeed, "[t]he gravamen of the complaint is the right to hold and exercise the powers of the office in contradistinction to an attack upon the propriety of the acts performed while in office." *Spykerman*, 421 A.2d at 648. In this respect, it is intended to address *public,* not *private* injury. *Bd. of Revision of Taxes, City of Philadelphia v. City of Philadelphia*, 607 Pa. 104, 4 A.3d 610, 627 (2010) ("A complaint in *quo warranto* is aimed at the right to exercise the powers of the office, which is a public injury, rather than an attack upon the propriety of the actions performed while in office, which would be a private injury.") Therefore, a complaint in *quo warranto* addresses the continued exercise of authority, not past conduct.

Here, the Attorney General brought a *quo warranto* action to challenge the appointment of the special prosecutor and the grand jury presentment. With respect to her challenge to the special prosecutor, Attorney General Kane claims that the supervising judge unlawfully and unconstitutionally exceeded his authority in appointing a special prosecutor for the grand jury and asks that the appointment be deemed to be invalid and quashed, and for a ruling that the special prosecutor had no authority to hold such public office. Memorandum of Law in Support of Attorney General Kathleen G. Kane's Quo Warranto Action, 12/23/14, at 1, 13. Given the inherently

forward looking nature of a *quo warranto* action, to the degree the special prosecutor *continues* to occupy his office [2], I would hold that the supervising judge had the inherent power to appoint an individual to investigate the breach of grand jury secrecy and to remedy any breach through contempt proceedings. That is, the supervising judge's appointment of the special prosecutor *as a special master* was proper, and, the judge had the authority to grant certain investigatory powers to him. *See Dauphin County.* However, the granting and exercise of power beyond that recognized by this Court in *Dauphin County* was improper, and I would enjoin the special prosecutor from exercising such *prosecutorial* powers in the future.

With respect to her challenge to the presentment, the Attorney General seeks a ruling that "no legitimate report or presentment can issue from this Investigating Grand Jury." Memorandum of Law in Support of Attorney General Kathleen G. Kane's Quo Warranto Action, 12/23/14, at 13. However, a presentment has been issued, and, as made clear above, such retrospective relief, seeking to unwind the acts previously taken by the special prosecutor, is beyond the scope of the limited nature of an action in *quo warranto.* *See City of Philadelphia; Spykerman.* Thus, even though, in my view, the use of the grand jury and the issuance of the presentment were beyond the authority of the special prosecutor, there is no current remedy available through an action in *quo warranto.*

---

2. It is unclear whether the special prosecutor's appointment has terminated, as he appeared on his own behalf at the oral argument before this Court on March 11, 2015. However, he has indicated that he is "unable to initiate any prosecution related to the alleged leaks," as the supervising judge has transferred the presentment to the Montgomery County District Attorney. Special Prosecutor's Brief at 25.